UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PORFIRIO OCAMPO,

                Petitioner,

                -against-

THOMAS LAVALLEY,

                Respondent.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
09-CV-5550 (PKC)

PAMELA K. CHEN, United States District Judge:

Porfirio Ocampo ("Petitioner"), appearing *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence for sexual assault. Petitioner claims that: (1) he was denied due process under the federal and state constitutions because he initially received a longer sentence after his second trial than was imposed after his first trial; (2) the evidence was insufficient to support his conviction; (3) the trial court improperly permitted "bolstering" evidence; and (4) his sentence was harsh and excessive. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

**A. Trial[1]**

On July 11, 2002, J.O., an eighteen-year old Spanish-speaking undocumented immigrant, started working for Petitioner delivering flowers in Manhattan. (T. 284, 466-67, 471-73.)[2] That day, Petitioner and J.O. picked up one of Petitioner's clients in Petitioner's van and drove to a flower nursery on Long Island. (T. 475, 477-78, 801-04, 807-808.) Petitioner then told J.O. that

---

[1] "In view of the defendant's conviction, we summarize the facts in the light most favorable to the verdict." *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

[2] "T." refers to the transcript of Petitioner's trial from September 25, 2006 to October 6, 2006. (Dkts. 16-3 to 16-11.)

1

they were going to "get soil" and drove them to board a ferry to Fire Island. (T. 478-79, 674.) J.O. did not know where they were or where they were going. (T. 478-80.) After they arrived on Fire Island, J.O. went to a house with Petitioner and Petitioner's client. (T. 304.) Petitioner first told J.O. to clean the pool and asked him to put on a swimsuit, which Petitioner's client provided. (T. 486, 489.) J.O. then put on a second swimsuit on top of the first, because the first one was "small". (*Id.*) After J.O. put on the swimsuits, Petitioner told J.O. they were going to the beach with Petitioner's client and his roommate. (T. 513-14.) After having spent some time at the beach, Petitioner told J.O. to return to the house with him while Petitioner's client and his roommate stayed at the beach. (T. 516-17.) At the house, Petitioner told J.O. to take a shower to wash off the sand on his body and J.O. complied. (T. 517.) When J.O. exited the bathroom after the shower, he saw Petitioner walking around naked. (T. 518-19.) J.O. asked Petitioner to give him his clothes, so that he could get dressed. (T. 519-20.) Petitioner showed J.O. where his clothes were on the floor. (*Id.*) As J.O. was reaching for his clothes, Petitioner grabbed J.O.'s right arm and "pushed [him] towards the bed", causing him to fall. (T. 520-21.) Petitioner and J.O. "continued to struggle". (T. 522.)[3] Eventually, Petitioner forced J.O. to his knees and "put his penis in [J.O.'s] mouth." (T. 522-23.) During the incident, J.O. repeatedly asked Petitioner to stop, but Petitioner did not. (T. 523-24.)

Petitioner then pushed J.O. onto the bed, got on top of him, and "put his knee into [J.O.'s] stomach." (T. 524.) Petitioner removed J.O.'s swimsuits and told J.O. to "turn around, that way it wouldn't hurt." (T. 525.) Petitioner then put lotion "on [J.O.'s] rear", inserted his penis and fingers into J.O.'s anus, and ejaculated on J.O.'s leg. (T. 527.) Petitioner told J.O. not to tell

---

[3] J.O. was approximately 5'4'' and weighed 135 pounds at the time of incident. (T. 1056.) Petitioner was forty-two years old and 5'8'', and weighed 172 pounds at that time. (T. 1392, 1456.)

2

anyone about the assault, and that even if he did, "no one would believe [him]". (T. 528.) Petitioner reminded J.O. that he was an immigrant and told J.O. that he (Petitioner) would tell people that J.O "had come to the country to prostitute [himself]." (T. 529.) J.O. then went to the bathroom and put on his pants and underwear. (T. 528-29.) He then left the house without his boots, socks, shirt, and watch. (T. 531-32.)[4]

J.O. sought help from the Fire Island police. (T. 552-54.) J.O. could not communicate with the police in English, so he signaled he had been sexually assaulted by creating a circle with his left hand and inserting his right finger into it. (T. 556-57.) Officer James Scandariato later testified at trial that J.O. made the gesture at the police station. (T. 752.) The police took J.O. back to the house and J.O. identified Petitioner as he was leaving the house. (T. 559-60.) J.O. then met with additional police officers and was examined by a nurse. (T. 591-92.) A Spanish-speaking officer, Tulio Serrata, took J.O. to Good Samaritan Hospital for a sexual assault examination, during which J.O. "was crying" and "being withdrawn". (T. 1013-14.) Nurse Angela Maddox, who examined J.O., observed "a perianal laceration" and "some rugal smoothing" that were "fresh." (T. 1021-22.) Nurse Maddox testified at trial that the injuries were more consistent with assault than voluntary sex (T. 1131-32) and photographs revealed bruises on complainant's arm where Petitioner had grabbed him (T. 567-68). Nurse Maddox also collected a swab from the ejaculate on J.O.'s right thigh, which the Suffolk County Crime Laboratory later concluded matched Petitioner's DNA profile. (T. 1293-94.) Petitioner's DNA was also found in J.O.'s underwear. (T. 1230-31, 1288, 1303.)

---

[4] These items were later recovered in front of the house by police. (T. 587, 936.)

3

### B. First Trial and Appeal

Based on the facts described above, Petitioner was convicted after trial of two counts of Sodomy in the First Degree, one count of Aggravated Sexual Assault in the Second Degree, and one count of Unlawful Imprisonment in the First Degree. Petitioner was sentenced as a second felony offender to a determinate sentence of twenty-five years in prison.

Petitioner appealed the verdict. On April 18, 2006, the Appellate Division overturned Petitioner's conviction and sentence on the grounds that the trial court incorrectly precluded defense counsel from arguing that the sexual encounter between Petitioner and J.O. was consensual and was, in fact, initiated by J.O, who was an undocumented immigrant in "desperate need of money" to pay back the coyotes who had brought him to the United States. *People v. Ocampo,* 28 A.D.3d 684, 685-86 (N.Y.S. 2d 2006). The Appellate Division further found that the error was not harmless because "[h]ad the defendant been able to convince the jury that the complainant was in dire need of money and willing to do anything to get it[,] the prosecution's case would have been weakened—perhaps considerably." *Id.* at 686. The Appellate Division ordered a new trial. *Id.*

### C. Second Trial

During the second trial, the prosecution presented the same facts as described above. However, in his defense, Petitioner attempted to establish that J.O. was a prostitute. Petitioner contended that when he first met J.O., he had "a long conversation" with J.O. "about gays" and told J.O. that he would be introducing J.O. to gay clients. (T. 1422.) Petitioner testified that he gave J.O. the option of not going to Fire Island where "there are a lot of gay people," but J.O. wanted to go because he "want[ed] to make more money." (T. 1429-30.) Petitioner contended

that, before they got to Fire Island, J.O. asked him "how much they pay for oral sex." (T. 1431.)[5] On cross-examination, J.O. admitted that he "needed money very badly", but denied being a prostitute. (T. 713, 715.)

Petitioner testified that J.O. voluntarily kissed, hugged, and performed oral sex on him. (T. 1449-50.) According to Petitioner, J.O. then asked him for $300 and Petitioner agreed to pay him. (T. 1450.) Petitioner contended that he ejaculated "in [his own] hand" and "left the room" afterwards, but that he did not put his penis or his fingers in J.O.'s anus. (T. 1452, 1455-56.) Petitioner stated that "after a while [J.O.] came to the [living] room" and "asked him for $500." (T. 1453.) Petitioner claimed that J.O. threatened to "go to the police" if Petitioner did not pay him in cash (instead of a check) and that he would "tell the police that [Petitioner] raped [him]." (*Id.*) Petitioner testified that J.O. then left without bringing his shoes, shirt, and watch, and "was not crying." (T. 1454, 1529.)

On October 9, 2006, Petitioner was convicted after trial of two counts of Sodomy in the First Degree, but was acquitted of Aggravated Sexual Abuse and Unlawful Imprisonment. On November 15, 2006, Petitioner was sentenced, as a prior felony offender, to two consecutive determinate terms of twenty years. (S. 32-33.)[6]

**D. Second Direct Appeal**

On appeal, Petitioner challenged his conviction and sentence on four grounds: (1) the evidence did not prove Petitioner's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (2) Petitioner was denied due process because he received a longer

---

[5] By contrast, J.O. stated on direct examination that he started to feel "afraid" because they were "a lot of posters of men with men[]" at the Fire Island house. (T. 511-512.)

[6] "S." refers to the transcript of Petitioner's sentencing on November 15, 2006. (Dkt. 16-12.)

5

sentence after his re-trial than had been imposed after his original trial; (3) the trial court permitted improper bolstering through Officer Scandariato's testimony that the complainant had made a finger-through-the-hole gesture to him and Nurse Maddox's testimony that the complainant's injuries were recent and consistent with the history she had taken from him; and (4) his sentence was harsh and excessive.

On June 17, 2008, the Appellate Division reduced Petitioner's sentence to determinate terms of ten years' imprisonment on the grounds that the trial court's forty-year sentence was excessive. *People v. Ocampo,* 52 A.D.3d 741, 742 (2008). The Court also held that the evidence was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt, that the verdict was not against the weight of the evidence, and that Petitioner's argument that his sentence was vindictive was unpreserved for appellate review and without merit. *Id.* at 741-42. The court also held that Petitioner's argument regarding the victim's prompt outcry to a police officer was unpreserved and without merit, and that his argument regarding Nurse Maddox's testimony was without merit. *Id.* at 742.

The Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision on September 30, 2008. *People v. Ocampo,* 11 N.Y.3d 792 (2008).

### E. Instant Habeas Opinion

Petitioner timely filed the instant *habeas* petition on December 14, 2009.[7] (Dkt. 1.) Respondent responded to the Court's Order to Show Cause on March 1, 2010. (Dkt. 8.)

---

[7] For purposes of applying the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996, Petitioner's conviction became final at the conclusion of the 90-day period within which Petitioner could have filed for a writ of certiorari following the Court of Appeals' September 30, 2008 decision. *See Lawrence v. Florida*, 549 U.S. 327, 333, 127 S. Ct. 1079, 166 L.Ed.2d 924 (2007); *Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005); 28 U.S.C. § 2244(d)(1)(A). Therefore, Petitioner had one year from December 30, 2008 in which to file this petition. In addition, although Petitioner did not exhaust the claims explicitly set forth in his

# STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may

---

petition, the Court nonetheless resolves them on the merits. 28 U.S.C.A. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Mobley v. Senkowski,* 01-CV-6301 (JBW), 2003 WL 22952846, at *2 (E.D.N.Y. Nov. 12, 2003).

not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 411 (2000)). The Second Circuit has added that, while "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

### I. Due Process (Ground 1)

Petitioner claims that he was denied due process under the federal and state constitutions because the sentence of forty years imposed after his second trial was greater than the twenty-five-year sentence imposed after his initial trial. (Dkt 1-2, at 6.) Petitioner's claim is moot because the New York State Supreme Court, Appellate Division, reduced petitioner's forty-year sentence to concurrent determinate sentences totaling ten years of imprisonment. *People v. Ocampo,* 52 A.D.3d 741 (2d Dept. 2008). Any injury Petitioner may have suffered under the harsher sentence was mooted when the sentence was reduced by the Appellate Division to a level lower than the sentence Petitioner received after the first trial. *See United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) ("[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the

litigation, have an actual injury, which is likely to be redressed by a favorable judicial decision." ) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).[8]

## II. Legal Sufficiency (Ground 2)

Petitioner claims that his guilt was not proven beyond a reasonable doubt because the proof was insufficient as a matter of law and the verdicts were against the weight of the evidence. The Court construes this *pro se* claim as contesting the sufficiency of the evidence under the Fourteenth Amendment's Due Process Clause.[9] "The Due Process Clause of the Fourteenth Amendment prohibits conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the defendant is charged." *Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (internal quotation marks omitted). Petitioner "bears a heavy burden" because the reviewing court must find that "viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The government's case need not exclude every possible

---

[8] Assuming *arguendo* Petitioner's claim is not moot, it is procedurally barred. *Ocampo*, 52 A.D.3d at 742; *see Mobley*, 2003 WL 22952846, at *3 (holding that when a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved") (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996)).

[9] Petitioner's claim that the verdict was against the weight of the evidence is not cognizable on federal *habeas* review. *See Lopez v. Superintendent of Five Points Corr. Facility*, 14-CV-4615 (RJS)(JLC), 2015 WL 1300030, at *12 (S.D.N.Y. Mar. 23, 2015), *report and recommendation adopted*, 14-CV-4615 (RJS)(JLC), 2015 WL 2408605 (S.D.N.Y. May 20, 2015) ("It is well-established that a weight of the evidence claim is exclusively a matter of state law and therefore presents no federal question reviewable by a federal habeas court." (collecting cases)); *Blake v. Martuscello*, 10-CV-2570 (MKB), 2013 WL 3456958, at *9 (E.D.N.Y. July 8, 2013) ("It is well settled that a 'weight of the evidence' claim . . . is not reviewable in [a] federal habeas proceeding." (collecting cases)); *Kearse v. Artuz*, 99-CV-2428 (TPG), 2000 WL 1253205, at *1 (S.D.N.Y. Sept. 5, 2000) (summarily dismissing challenge to verdict against the weight of the evidence on the ground that "[d]isagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief").

9

hypothesis of innocence as it "is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

Under the New York Penal Law in effect at the time, "[a] person is guilty of sodomy in the first degree when he or she engages in deviant sexual intercourse with another person [b]y forcible compulsion." N.Y. Penal Law § 130.50.[10] Petitioner does not deny that he and the victim engaged in sexual acts, but contends that the acts were consensual. Petitioner asserts that no evidence of "injury and laceration" and "no medical evidence of treatment after or on" the day of the assault would support the conviction. (Dkt. 1-2 at 7.)

The Court finds that Petitioner has failed to show that no reasonable jury could have found that he was guilty of forcing J.O. to have sexual intercourse "by forcible compulsion." Viewing the evidence in the light most favorable to the prosecution, it was entirely reasonable for the jury to reject Petitioner's account of events and accept J.O.'s account, which was corroborated by photographic evidence and witnesses' testimony. There was overwhelming evidence presented at trial on which a rationale trier could have found Petitioner guilty, including: J.O.'s police report on the day of the assault and his subsequent detailed testimony (T. 552-57, 752); the photographs showing bruises on J.O.'s arms (T. 567-68); Nurse Maddox's findings of a laceration and rugal swelling around J.O.'s anus, as well as her testimony about his withdrawn state (T. 568, 1021-22, 1047); and forensic evidence of semen containing Petitioner's DNA on J.O.'s right thigh and underwear (T. 1284). Indeed, the physical evidence alone directly contradicted much of

---

[10] The provision was changed to "Criminal Sexual Act in the First Degree" in 2003. N.Y. Penal Law § 130.50.

Petitioner's account, including his testimony that the sex was consensual and that he ejaculated in "[his own] hand" and then "left the room".

Furthermore, "[e]ven if the sufficiency of the evidence were a debatable point, the factual findings of a State court must be presumed to be correct." *Ortiz v. Rock*, 09-CV-679 (PKC), 2016 WL 6068808, at *7 (E.D.N.Y. Oct. 13, 2016); *see* 28 U.S.C. § 2254(e)(1). Here, Petitioner has not shown "clear and convincing evidence" to rebut the jury's finding. He is therefore not entitled to *habeas* relief based on this ground.

### III. Improper Evidence (Ground 3)

Petitioner claims that the trial court made several erroneous evidentiary rulings. (Dkt 1-2, at 8.) Petitioner argues that improper bolstering occurred where the trial court permitted Officer Scandariato's account of J.O.'s complaint, specifically in which he construed the victim's "finger-through-the-hole" gesture to mean sexual intercourse. Petitioner further argues that Nurse Maddox's testimony that J.O.'s injuries was recent and consistent with sexual assault was inadmissible hearsay.[11]

Improper evidence violates due process only if the evidence "is so extremely unfair that its admission violated fundamental conceptions of justice." *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998). "[N]ot all erroneous admissions of such evidence are errors of constitutional dimension." *Id.* An erroneous admission rises to a deprivation of due process "only if the evidence in question was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Johnson v. Ross*, 955 F.2d 178, 181 (2d

---

[11] Additionally, Petitioner argues for the first time that the prosecution paid "several hundred dollars['] cash to Nurse Maddox to lie and fabricate the case" and that the police fabricated this entire case. (Dkt. 1-2 at 8.) Aside from being procedurally barred, these claims are meritless and unsupported by evidence.

Cir. 1992). "[I]mproper bolstering does not rise to the level of a due process violation." *Ochoa v. Breslin*, 798 F. Supp. 2d 495, 505 (S.D.N.Y. 2011). "While the practice of bolstering is prohibited in various states, including New York, it is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial." *Nieves v. Fischer*, 03-CV-9803 (DC), 2004 WL 2997860, at *7 (S.D.N.Y. Dec. 28, 2004). Specifically, bolstering occurs "when one witness confirms an identification previously made by another witness." *Roa v. Portuondo*, 548 F.Supp.2d 56, 82 (S.D.N.Y. 2008).

### A. Officer Scandariato's Testimony

Assuming Petitioner's claim is not procedurally barred, the claim itself still lacks merit. Under New York law, "evidence of a 'prompt outcry' is admissible to corroborate the allegation that a sexual assault took place," *Felix v. Conway*, 08-CV-0452 (MAT), 2011 WL 467087, at *4 (W.D.N.Y. Feb. 4, 2011); however, "only the fact of a complaint, not its details, is admissible[,]" *People v. McDaniel*, 81 N.Y.2d 10, 17 (1993). In addition, the complaint must be "made at the first suitable opportunity." *Id.*

Officer Scandariato's testimony falls under the prompt outcry exception and was properly admitted. He described a complaint that was made shortly after the assault and used the "finger-through-the-hole" gesture to explain that the complaint had to do with sexual intercourse. (T. 753.) Officer Scandariato did not provide any details in the complaint and did not confirm J.O.'s account of the incident, including the identity of the assailant. Such testimony does not improperly bolster J.O.'s statement by confirming the details of J.O.'s allegation.

Even if this Court were to accept Petitioner's contention that the officer's testimony constituted improper bolstering, the admission of this testimony still does not rise to the level of a due process violation justifying federal *habeas* relief. As discussed, in part, improper bolstering

12

does not "state a federal constitutional claim cognizable on habeas corpus." *Kanani v. Phillips*, 03-CV-2534 (PKC)(AJP), 2004 WL 2296128, at *21 (S.D.N.Y. Oct. 13, 2004), *report and recommendation adopted*, 03-CV-2534 (PKC), 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005). Here, Petitioner has failed to show that Officer Scandariato's testimony was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Johnson*, 955 F.2d at 181. The officer's testimony did not allude to the crucial issue in the case, *i.e.* whether the sexual intercourse was consensual, or provide the basis for conviction; nor did it identify Petitioner as the perpetrator. In fact, Officer Scandariato testified that he "didn't know whether [the case was] a rape or assault." (T. 761.) Therefore, the improper bolstering, if there was any, did not rise to a violation of the Due Process Clause. Petitioner is not entitled to *habeas* relief on this ground.

### B. Nurse Maddox's Testimony

Petitioner's claim regarding Nurse Maddox's testimony also lacks merit. "[I]t is proper, in a rape prosecution, for a medical expert to offer testimony that the victim sustained injuries that were consistent with the use of force." *Reid v. Giambruno*, 03-CV-0250 (VEB), 2007 WL 3232497, at *17 (W.D.N.Y. Oct. 31, 2007); *People v. Rogers*, 8 A.D.3d 888 (3d Dept. 2004) (holding that the trial court did not abuse its discretion in permitting a "sexual assault nurse examiner" who conducted a physical examination of the victim to testify, based on her training and experience, "that the victim's injuries were consistent with a forcible sexual encounter and not consistent with consensual sex"). Nurse Maddox, as a "sexual assault nurse examiner", testified that, based on her training and experience, J.O.'s injuries were recent and more consistent with forcible penetration than consensual sex. (T. 1021-22, 1132.) Such testimony is plainly

13

permissible under the state law and does not constitute a violation of Due Process Clause. Petitioner is not entitled to *habeas* relief on this ground.

## IV. Harsh and Excessive Sentence (Ground 4)

Petitioner argues that his sentence of forty years was excessive. (Dkt. 1-2 at 10.) Petitioner's claim is not cognizable on federal *habeas* review. An excessive sentence claim may not provide grounds for *habeas* relief in federal court where a petitioner's sentence is within the statutory range prescribed by state law. *Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) (citing *White v. Keane,* 969 F. 2d 1381, 1383 (2d Cir. 1992)). Here, the sentences imposed were all within the ranges prescribed by New York law for Petitioner's two counts of conviction for Sodomy in the First Degree, *see* New York Penal Law § 130.50; therefore, no federal constitutional issue is presented, *White*, 969 F. 2d at 1383. Because Petitioner's sentence was well within the legally prescribed ranges under state law, the Appellate Division's determination that Petitioner's sentence was not unduly harsh or excessive was not contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner's application for *habeas* relief on this ground is denied.[12]

---

[12] In the "relief" section of his form petition, Petitioner makes cryptic references to "evidence contradict[ing] the accusation in this case," the Fifth Amendment, and double jeopardy. (Dkt. 1-2 at 15.) At a minimum, any claims that could be inferred from these references were not raised in Petitioner's state court appeals and are therefore unexhausted. To the extent that Petitioner is challenging the grand jury proceedings or indictment in his case, that claim also fails on the merits, because "alleged defects in a state grand jury proceeding generally cannot provide grounds for habeas relief." *Swanton v. Graham*, 07-CV-4113 (JFB), 2009 WL 1406969, at *11 (E.D.N.Y. May 19, 2009). Similarly, if Petitioner is alleging double jeopardy based on his retrial, that claim fails on the merits, because no acquittal resulted from his first trial; rather, he was retried after his conviction was reversed. *See North Carolina v. Pearce*, 395 U.S. 711, 720 (1969) (holding double Jeopardy Clause does not preclude retrial of defendant whose first conviction was overturned).

# CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Ocampo is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (internal quotation marks and citation omitted) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further"). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 19, 2018
      Brooklyn, New York